United States District Court
Southern District of Texas
FILED

APR 1 1 2000

Michael N. Milby, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SEAN W. b/n/f MARCIA W., | § | |
| | § | |
| vs. | § | Civil Action No. C-00-068 |
| | § | |
| CORPUS CHRISTI INDEPENDENT | § | |
| SCHOOL DISTRICT, NUECES COUNTY, | § | |
| AND STEVE SCHWERIN, | § | |
| CHIEF PROBATION OFFICER | § | |

## PLAINTIFF'S UNOPPOSED MOTION FOR LEAVE TO SUPPLEMENT FIRST AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Sean W. b/n/f Marcia W. and files this his Unopposed Motion for

Leave to Supplement First Amended Original Complaint and for cause would

respectfully show as follows:

1.   Plaintiff seeks leave to supplement his First Amended Original Complaint in

order to attach to the complaint Exhibit "A" that is referred to in the complaint.  Exhibit

"A" is a copy of the written decision regarding the relief Plaintiff sought in the special

education due process hearing.  A copy of Exhibit "A" is attached hereto for the Court's

review.

2.   Pursuant to Rule 15(d) of the Federal Rules of Civil Procedure, upon motion of a

party, a court may, upon reasonable notice and upon such terms as are just, permit the

party to serve supplemental pleadings.  In this instance, Plaintiff seeks leave to

supplement his First Amended Original Complaint with Exhibit "A" because the exhibit

had been inadvertently left off the complaint when it was filed.

<u>CERTIFICATE OF CONFERENCE</u>

In accordance with the local rules for the Southern District of Texas, counsel for Plaintiff has conferred with counsel for Defendants and represents to the Court that counsel for Defendants are unopposed to the motion.

WHEREFORE, PREMISES CONSIDERED Plaintiff requests that the Court grant his Motion for Leave to Supplement First Amended Original Complaint and for such other and further relief to which he may be justly entitled.

Respectfully submitted,

_____

Les Cassidy
500 N. Water Street
1020 Bank of America Center North
Corpus Christi, Texas  78471
(361) 887-2965  office
(361) 887-6521  fax
State Bar No.:  0392970
Federal I.D. No.:  5931

Attorney-in-Charge for Plaintiff

ClibPDF - www.fastio.com

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was forwarded by

hand delivery this 11th day of April, 2000, to:

John Holmgreen
210 S. Carancahua
Corpus Christi, Texas  78401

Linda Flores-Resendez
801 Leopard St.
P.O. Box 110
Corpus Christi, Texas  78401

Walter Bryan
Nueces County Attorney's Office
901 Leopard
Corpus Christi, Texas 78401

Les Cassidy

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SEAN W. b/n/f MARCIA W. | § | |
| | § | |
| vs. | § | Civil Action No. C-00-068 |
| | § | |
| CORPUS CHRISTI INDEPENDENT | § | |
| SCHOOL DISTRICT, NUECES COUNTY, | § | |
| AND STEVE SCHWERIN, | § | |
| CHIEF PROBATION OFFICER | § | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT FIRST AMENDED ORIGINAL COMPLAINT

On this day came on to be considered Plaintiff's Unopposed Motion for Leave to

Supplement First Amended Original Complaint. After reviewing the pleadings on file

and the arguments of counsel, the Court finds that the motion should be and is hereby

GRANTED and Plaintiff is directed to file his supplemental exhibit to his First Amended

Original Complaint.

SIGNED AND ENTERED this _____ day of _____, 2000.


_____
UNITED STATES DISTRICT JUDGE

## DOCKET NO. 289-SE-599

| | | |
|---|---|---|
| SEAN W. bnf MARCIA W. | § | BEFORE A SPECIAL EDUCATION |
| | § | |
| V. | § | HEARING OFFICER FOR THE |
| | § | |
| CORPUS CHRISTI | § | |
| INDEPENDENT SCHOOL DISTRICT | § | STATE OF TEXAS |

## DECISION OF THE HEARING OFFICER

### I.  Statement of the Case

Petitioner Sean W. brings this appeal by his next friend, Marcia W., pursuant to the Individuals with Disabilities Education Act (hereinafter referred to as "IDEA"), 20 U.S.C. § 1400 *et seq.*, against Respondent Corpus Christi Independent School District (hereinafter referred to as "Respondent" or "Corpus Christi ISD"). Petitioner Sean W. by next friend Marcia W. (hereinafter referred to as "Petitioner" or "Sean") filed a written request for a due process hearing which was received by the Texas Education Agency on May 20, 1999. Petitioner was represented by Attorney Les Cassidy of Corpus Christi, Texas. Respondent was represented by Attorney Linda Flores Resendez of Corpus Christi, Texas. A telephone prehearing conference was held on June 18, 1999, at which time both parties waived their right to a final decision within forty-five (45) days of the date the written request for due process hearing was filed. A due process hearing was held on Thursday-Friday, October 22-23, 1999, in Corpus Christi, Texas. The parties agreed to file post-hearing briefs on or before July 30, 1999.

Petitioner alleges that Sean is a 12-year-old student in CCISD who receives special education placement, programs and services on the basis of meeting eligibility criteria as a student who has multiple disabilities:  Tourette's Syndrome, Obsessive Compulsive Disorder ("OCD") and Attention Deficit/Hyperactivity Disorder ("ADHD"). Petitioner asserts the following:

1.     Petitioner alleges the Respondent has failed to provide a Free and Appropriate Public Education by failing to identify Sean's disabilities and has failed to provide adequate services including certified and trained staff and para-professionals to work with Petitioner. Sean was also denied participation in field trips and extracurricular activities in violation of his Individualized Education Plan ("IEP").

2.     Petitioner alleges that Petitioner was falsely arrested on or about 3/3/99 at Baker Middle School by a campus security officer guard with Respondent's knowledge and cooperation with no Memorandum of Understanding with Corpus Christi Police Department. Petitioner contends that the arrest constituted unlawful punishment of Sean because of his behavior directly related to his known disabilities.

3.     Petitioner further alleges that Respondent failed to implement Petitioner's Behavior Improvement Plan ("BIP") for 1998-1999 school year.

## EXHIBIT "A"

ClibPDF - www.fastio.com

4.      Sean's parents are asking that Sean be provided with additional counseling to enable him to deal with stress and frustrations. Sean's parents are also asking for tutoring in math because he did fall behind and did not obtain his goals on the TAAS testing for math. Sean's parents are also asking that certain individuals be prohibited from interacting with Sean because past interactions had caused him to develop him a phobia toward school. Finally, Sean's parents are asking for that the school pay for extra curricular activities in lieu of the football that Sean was effectively denied. Petitioner is also requesting that all school staff, security personal and substitute personal be trained in appropriate methods in teaching and dealing with security issues.

Respondent contends that each and every allegation made by Petitioner is denied and demands strict proof thereof. Respondent alleges that the BIP was followed in regard to the incident on or about 3/3/99. Respondent also alleges that a Memorandum of Understanding is not required by law. Respondent denies that Petitioner was not able to participate in extra curricular activities.

Based upon the evidence and the argument of counsel, the Hearing Officer makes the following findings of fact and conclusions of law.

## II. Findings of Fact

1.      Sean is a 12-year-old male student who resides within the Corpus Christi Independent School District. The Athena Program in CCISD is designed for children who are gifted and talented. Sean completed the seventh grade at the end of the 1998-1999 school year. It is for high functioning academically high performing students.

2.      CCISD is a political subdivision of the State of Texas and a duly incorporated Independent School District responsible for providing Sean a free appropriate public education in accordance with the Individuals with Disabilities Education Act, 1400 U.S.C. § 1400, *et seq.*, and the rules and regulations promulgated pursuant to IDEA.

3.      Sean is eligible for special education placement, programs and services as a student who has multiple disabilities: Tourette's Syndrome, Obsessive Compulsive Disorder ("OCD") and Attention Deficit/Hyperactivity Disorder ("ADHD").

4.      Sean's disabilities specifically affect his behavior. His OCD causes him to do actions repetitively or act out something or say something over and over again until he feels a release of the drive compelling him to do it. His ADHD causes him to be loud at times, yelling when he does not know that he is yelling. Sean is also impulsive and impatient as a part of being hyperactive. Sean's Tourette's Syndrome causes him to impulsively say inappropriate and sometimes insulting and obscene things as a part of his disorder. Finally, Sean suffers from depression.

5.      Sean's behaviors associated with his Tourette's Syndrome are variable. Sometimes the symptoms can wax and wane in severity throughout the years. Some specific behaviors can

---

**DECISION OF THE HEARING OFFICER**                                    **PAGE 2**

manifest themselves and then fade away. Sean also has coprolalia which is not only the tendency to utter obscene and profane language but also aggressive and profane statements. Sean also has copropraxia which causes him to make obscene gestures. Sean also has echoproxia where he imitates and mimics other peoples behavior. He also has echolalia which is repetition of others and what they say and as well as what he says. Sean is currently taking medication for his disabilities.

6.       Sean's mother took specific steps to apprise Sean's teachers of his disability. Sean's mother specifically allowed the District contact with Sean's pediatric psychiatrist. Sean's mother also, gave Baker Middle School teachers books at her expense, and video tapes. Ms. W. also, performed an in-service education and spoke with teachers, staff members, and faculty administration about Sean's disabilities.

7.       Ms. W. specifically met with Kathy Bergenzer, who is the special education teacher at Baker Middle School. Ms. Bergenzer ordered books from the Tourette's Syndrome Association through Ms. W. and assured Ms. W. that she would share the information about Sean's disabilities with her colleagues.

8.       At the end of Sean's sixth grade he entered puberty and began to have "breakthrough" symptomatic problems and behavior. When this was brought to the attention of school officials at a March 4, 1998 ARD it was determined that a Behavior Intervention Plan ("BIP") would be established for the following year. Because of some breakthrough aggressive actions, Nora Garza, the Assistant Principal, requested that Sean be assigned a para-professional for the seventh grade until his medication took effect and he became more in control of his behavior.

9.       Eventually, the para-professional who stayed with Sean throughout the year, was Ben Rios, who was represented to be a qualified, trained para-professional. Mr. Rios had not been trained in crisis intervention and the Corpus Christi ISD safety approved handling/restraint techniques for children with behavioral problems.

10.      Ms. W. understood that in implementing Sean's BIP that officials would attempt to redirect him in a calm, non-confrontational manner and would have the opportunity to earn points on a point system if he followed designated rules. She also understood that if Sean had problems that warranted In-School Suspension ("ISS") that he would be assigned ISS for non-symptomatic behaviors unrelated to his disability. It was also understood that he would not be punished for behaviors that were related to his disability. As a part of his behavior plan he could also elect timeout to see the counselor, the nurse, or to go to his Content Mastery Class ("CMC"). As a last resort it was understood that if Sean were upset and all techniques had previously been tried and failed that Sean would not stay on campus if he posed a physical threat to himself or someone else and that the District would call Sean's parents under an emergency removal plan to pick him up and keep him out until he regained his composure.

11.      As a part of Sean's IEP, Sean was to have the opportunity to participate with students without disabilities in all non-academic and extracurricular activities.

---

**DECISION OF THE HEARING OFFICER**                                              **PAGE 3**

ClibPDF - www.fastio.com

12.     The first part of the seventh grade Sean wanted to join the football team.  Coach Mounts objected to Sean's participation and called for an ARD meeting to note his objections.  Over Coach Mounts' objections, Sean was allowed to participate in football with certain restrictions.  The restrictions included Sean's mother being required to stand on the sidelines as Sean participated in football.   While Sean was on the team, he was never actually permitted to play in a game.

13.     Mr. Rios actually dressed out in sports shorts and t-shirt and participated along with Sean during practices.  It is Ms. W.'s opinion that the arrangement stigmatizes Sean.

14.     Mr. Rios' behavior was overly restrictive on Sean.  Sean felt as he had no privacy and was constantly being monitored.  Mr. Rios also began to criticize Sean about his physical and verbal ticks and his coprolalia.  In Ms. W.'s opinion Mr. Rios began to act as Sean's personal disciplinarian.  Ms. W. contacted Kathy Bergenzer and Nora Garza several times about Mr. Rios' restrictive practices.  Sean had also told Ms. Bergenzer that Mr. Rios watched him too closely.

15.     Sean began to have psychological symptoms that resulted in his hospitalization in November of 1998.  The circumstances started with football.  Mr. Rios continued to pull Sean out of class for symptomatic behaviors and take him down to the office to have Sean written up and be given detention or placed in ISS.  It was previously understood that if Sean misbehaved in class he would lose his privileges with respect to football.  However, Mr. Rios took it upon himself to individually report to Coach Mounts instances where Sean misbehaved.  As a result, Sean was pulled from participating in the first game.  Sean was distraught and upset and confronted Ms. Godbout, the teacher in whose class Mr. Rios had said Sean misbehaved.  Mr. Rios also made another report to the Coach and Sean was pulled from a second game.  As a result of the additional stress, Sean was getting more frustrated and having symptoms such as stomach aches and headaches.  Even though Ms. Bergenza was informed of Mr. Rios' inappropriate behavior, Sean' depression deepened and he began showing signs of school phobia and shutting down.  Being removed from the team caused Sean's self-esteem to go even lower and he began to consider Mr. Rios as his enemy.  When Sean began to sleep 20 of 24 hours in the day he was hospitalized November 19-30, at the Bay View Hospital for psychiatric reasons.

16.     At a November 1998 ARD Ms. W. explained to school officials the stresses that cause Sean's behavior to deteriorate, she specifically mentioned Sean's problems with his para-professional and the para-professional's inappropriate behavior.  She also told the ARD committee of Sean's doctors observations of the stressors being caused from Sean's relationship with Mr. Rios.  In a cluster meeting held in January 1999, Sean's BIP was modified to include more rewards for positive behavior.

17.     One symptom of Sean's disability is that when he feels that he is overwhelmed and over stressed, he relieves the internal pressure by running and climbing something.  Such as a tree or a flag pole.

---

**DECISION OF THE HEARING OFFICER**                                   **PAGE 4**

18.    On February 1, 1999, Sean was placed in ISS with Mr. Rios' recommendation for making an inappropriate statement that included profanity. Ms. Nora Garza also called in and filled out a suspension notice because of Sean's claimed persistent misbehavior. Ms. Garza also attempted to temporarily suspend Sean for running out in the school yard and climbing a tree but then styled the suspension as "emergency removal".

19.    On another occasion Sean was disciplined because Mr. Rios reported what Sean had said with another student during a private conversation.

20.    On March 3, 1999, Sean became upset during an argument he had with his classmates. The substitute teacher who was in Sean's class at the time instructed Sean to go to CMC. Sean refused to comply because of previous teasing at CMC and said that he wanted to go climb a tree. He was unusually angry. During the confrontation with the teacher, Mr. Rios left the classroom to get the campus based Corpus Christi Police Department police officer, De La Garza. Officer De La Garza asked Sean to come with him to the school's office and Sean refused to leave. Officer De La Garza began to grab Sean's hands and arms which caused Sean to thrash about, swing his arms and become progressively louder. Sean was then handcuffed and forcibly taken to the school's office. Sean was subsequently arrested for assaulting a police officer and taken to juvenile jail facility.

21.    Officer De La Garza did not report that Sean had assaulted him. His report states that Sean was arrested for disruptive activities and interference with public duties. Sean was previously arrested by Officer De La Garza in October of 1998 for another incident.

22.    All charges against Sean for the March 1999 incident were dropped by the Juvenile Justice Department when is was acknowledged that Sean had been diagnosed with a disability. The juvenile justice center specifically acknowledged that CCISD had a plan in forced to handle Sean's behavior problems.

23.    At a March 8, 1999 discussion of a school field trip, it was determined by officials of Baker Middle School that Sean could accompany his class on a field trip as long as Sean's para-professional and Nora Garza were with him at all times. It is Ms. W.'s understanding that they were to sit and eat with Sean both on the bus and throughout the tour of the state capitol in Austin. Ms. W. considers the restrictions on Sean to have been excessive.

24.    At the end of April 1999 Sean was being teased by his classmates and became extremely upset. He was allowed to go to the nurse's station and then to the office of Darla Reid, the school principal, who attempted to calm Sean down by having him run errands. Later that same day, Kathy Bergenza called and had Sean's parents pick him up from school. The procedures used that day were not in accordance with Sean's BIP, which called for counseling.

25.    Sean's teachers had not been informing Sean's parents that Sean had begun to fall behind academically in specific subjects. Sean's mother began to prepare assignment sheets that

---

**DECISION OF THE HEARING OFFICER**                                    **PAGE 5**

were sent to school everyday with Sean.  Toward the end of the school year, Sean's grades improved. His behavior also improved because by the end of the school year he had finally gotten another para-professional: Robert Garzia instead of Ben Rios.

26.     Sean has passed the TAAS test and is doing very well academically.  Sean is currently receiving a 45-minute tutoring period.  Sean also has a special education counselor that he sees once a week.  Sean also sees Ms. Bergenza once a week or whenever he wants to.

27.     On April 28, 1999, Sean voluntarily removed himself form one of his classes.  Sean came to Ms. Bergenza and stated that students were bothering him and calling him names.  He did not, however, name any specific student who was bothering him and Ms. Bergenza was unable to investigate the name calling further.

## III. Discussion

Sean W. is a 12 year-old middle school student has a disability that *severely impacts his behavior and his ability to consistently participate in his classes.*  The Tourette's Syndrome, Obsessive Compulsive Disorder, and ADHD combined to create a student who is sometimes very disruptive to any classroom.  The appropriate implementation of  a BIP and a responsive and understanding staff of teachers, administrators and para-professionals is crucial to prevent Sean's disability from interfering with his academic progress.  The Hearing Officer is convinced that with one notable area of exception, Respondents, through the teachers and administrators of Baker Middle School, understood Sean's educational needs and balanced them with the needs for order and safety at the school.  Unfortunately, this case is primarily the outgrowth of an unfortunate incident which occurred on March 3, 1999 where a campus based police officer was required to intervene in an instance of Sean's rage and out of control behavior.  The resulting arrest and removal of Sean to a juvenile facility was obviously traumatic and unfortunate.  However, taken as a whole, it does not appear that Respondent acted irresponsibly or in violation of the applicable provisions of IDEA.

### Failure to Identify

Petitioner makes the more generalized allegations that Respondent failed to identify Sean's disabilities, to provide adequate service and train staff and deny Sean participation in field trips and extra curricular activities.  This record does not support these generalized allegations.  It does seem that Respondent, due in no small part to the laudable and active participation of Sean's mother, Ms. W., had adequately identified Sean's multiple disabilities.  It is also clear that adequate services were proposed in Sean's IEP and BIP to deal with Sean's disabilities.  While certain aspects of the participation of Sean's para-professional were problematic, it also appeared that staff at Baker Middle School were adequately trained to work with Sean on a day-to-day basis.  On one occasion when a substitute teacher was necessary, Sean could have been taught by a teacher who was not completely familiar with or used to dealing with a student with Sean's

---

**DECISION OF THE HEARING OFFICER**                                          **PAGE 6**

ClibPDF - www.fastio.com

disabilities.  The nature of Sean's multiple disabilities would inevitably produce such a result.  However, Sean was handled professionally and with full consideration of his disabilities by most professionals at Baker Middle School virtually all of the time.  Those times when misunderstandings or problems occurred, short of emergencies, did not significantly interfere with Sean's education.  Moreover, while there was some conflicting testimony of record, the Hearing Officer concludes that Sean was allowed to participate in field trips with limited success due to the inflammatory nature of his disability.

## March 3, 1999 Incident

Petitioner alleges that Sean was falsely arrested on March 3, 1999, by campus security and that the arrest constituted an unlawful punishment of Sean because of his behavior.  Overall, the Hearing Officer cannot agree with this allegation.  All of the testimony of record seems to indicate that Sean was definitely out of control on that day due to his disability, and that some effort was required to be made to bring him in control.  It does not appear to this Hearing Officer, that the effort that was made by an officer of the Corpus Christi Police Department based on the campus of Baker Middle School was excessive, unprofessional or insensitive to Sean's disabilities.  In fact, the Hearing Officer would have to concur with Respondent that the District discharged its statutory obligation under 20 U.S.C. §1415(k)(9)(A).  When a reasonable effort by the classroom teacher and the para-professional had been made to calm Sean down had failed, it was appropriate to bring in law enforcement authorities to defuse the situation.  Sean's reaction to the police officer was predictably unfortunate and only served to escalate the traumatic nature of the incident.  However, even though Sean ultimately suffered most in the exchange, the response was precipitated by Sean's disruptive and possibly unlawful behavior.  Sean was not ultimately punished for such behavior, but the actions of the police officer and Respondent on that day seem justified.  The Hearing Officer is also not convinced that the presence of absence of a Memorandum of Understanding or any such agreement between Respondent and the City of Corpus Christi would have significantly altered the actions taken on March 3, 1999.  I do not conclude that such a document significantly bears on any issue in this case.

## Failure to Implement BIP

Petitioner also claims that Respondent failed to implement Petitioner's Behavior Improvement Plan for the '98-'99 school year.  In this regard, the Hearing Officer must concur with Petitioner's position primarily in the area of the activities of Sean's assigned para-professional, Ben Rios.  The record shows that the original reason for Sean being assigned a para-professional was to intervene in situations when Sean's behavior got out of control and required intervention by an adult other than the school teacher.  However, Mr. Rios apparently misunderstood his role with respect to Sean and became overly restrictive and adversarial.  He seemed to insinuate himself into Sean's discipline for behaviors and statements that were directly related to Sean's disability.

---

**DECISION OF THE HEARING OFFICER**                                    **PAGE 7**

Mr. Rios' actions had particularly unfortunate consequences on Sean's participation in the extra curricular activity of football. In that instance, Sean's para-professional went from assistant or aide to an individual disciplinarian. Mr. Rios reported to Sean's coach comments and behavior directly related to his disability. The coach's resulting prohibition against Sean participating in football games for which he had practiced, had extremely negative impacts on Sean's emotional state and subsequent behavior. The Hearing Officer finds the testimony offered by Petitioner more persuasive on this point. It does appear that Sean became frustrated and depressed because of Mr. Rios' interference and went into a spiraling emotional state resulting in his hospitalization for emotional reasons in November of 1998.

## Relief Requested

Most of the relief requested by Petitioner's parents is not just justified. The record shows that Respondent is generally adequate in dealing with school security issues, including those created by a student with Sean's disabilities. The record does not justify any attempt by this Hearing Officer to order the Respondent to curtail the activities of Officer De La Garza *vis a vis* Sean. Even if the Hearing Officer had such authority under IDEA or Corpus Christi Independent School District had such authority (both being very doubtful) the record does not support such an attempt. Petitioner has asked for math tutoring because Sean did not obtain his goals on the TAAS test for math. However, Sean passed his TAAS test and this record does not show that any specific actions by the Respondent caused such a failure. Without this showing I cannot conclude that tutoring is an appropriate relief requested. Petitioner's request that Respondent pay for extra curricular activities in lieu of the football that Sean was denied seems to be a reasonable request. The record shows that Sean was frustrated into leaving the football team. It is not clear, however, that Sean would not be able to effectively participate in another extra curricular activity short of the District being ordered to pay for an un-named and un-specified extra curricular activity outside of the District. Some compensatory relief in this area does seem appropriate. Finally, the Hearing Officer does concur that Sean should be given compensatory education in the form of additional counseling to assist him in dealing with the stress and frustration of his disabilities. Petitioner was not specific in her request about the amount of additional counseling, but the Hearing Officer is of the opinion that an additional 30 minutes per week of special education counseling should be awarded Petitioner for at least on academic semester as compensatory relief.

## IV. Conclusions of Law

1.    Petitioner Sean is a student in CCISD who is eligible for special education services based on his classification as a student with multiple disabilities: Tourette's Syndrome, Obsessive Compulsive Disorder ("OCD") and Attention Deficit/Hyperactivity Disorder. 34 C.F.R. § 300.7; 19 T.A.C. § 89.1040.

2.    Respondent CCISD has a responsibility to provide Sean with a free appropriate public education. 20 U.S.C. § 14.01(a)(18).

**DECISION OF THE HEARING OFFICER**                                   **PAGE 8**

ClibPDF - www.fastio.com

3.      Respondent CCISD has generally provided Sean with a Free and Appropriate Public Education in all respects except for the appropriate implement of his behavior intervention plan.

4.      Respondent CCISD's participation in Sean's March 3, 1999 arrest was appropriate and in accordance with applicable provisions of IDEA. (20 U.S.C. §1415(k)(9)(A).

5.      Respondent CCISD's failure to completely implement Sean's BIP contributed to Sean's need for compensatory counseling and participation in an extra curricular activity.

## V. Order

After due consideration of the record, the foregoing Findings of Fact and Conclusions of Law, the Hearing Officer ORDERS that the relief sought by Petitioner is denied in part and granted in part.

Respondent is ordered to provide Petitioner with thirty additional minutes of special education counseling for one semester. Respondent is further ordered to convene an ARD Committee meeting for the purpose of determining a plan for providing an appropriate extra curricular activity for Sean.

All other relief not expressly granted herein is DENIED.

Finding that the public welfare requires the immediate effect of this Final Decision, the Hearing Officer makes it effective immediately.

SIGNED this _____ day of November, 1999.

Stephen P. Webb
Special Education Hearing Officer

## NOTICE TO THE PARTIES

Under State Board of Education rules, it is not necessary for a party to perfect an appeal to state district court by filing a Motion for Rehearing. However, either party may request, within ten (10) days after the date of this decision, specified additional or amended findings of fact or conclusions of law.  19 T.A.C. § 89.1185(n) (o).

---

**DECISION OF THE HEARING OFFICER**                                    **PAGE 9**

ClibPDF - www.fastio.com

# DOCKET NO. 289-SE-599

| | | |
|---|---|---|
| SEAN W. bnf MARCIA W. | § | BEFORE A SPECIAL EDUCATION |
| | § | |
| V. | § | HEARING OFFICER FOR THE |
| | § | |
| CORPUS CHRISTI | § | |
| INDEPENDENT SCHOOL DISTRICT | § | STATE OF TEXAS |

## SYNOPSIS

**Issue:** Sean W. is a 12 year-old student in the eight grade at Baker Middle School who receives special education services as a student who has Tourette's Syndrome, Obsessive Compulsive Disorder, and Attention Deficit/Hyperactivity Disorder. His disabilities adversely affect his classroom behavior and his interaction with his teachers and peers. Parents claim that Corpus Christi Independent School District failed to draft and implement Sean's Behavior Improvement Plan, failed to allow Sean to participate in extra curricular activities, failed to have trained staff available to teach Sean, and wrongfully participated in Sean's arrest arising from a March 3, 1999 incident where Sean was removed from Baker Middle School by a campus based police officer employed with Corpus Christi Police Department. On that occasion, Sean was a rage and was exhibiting out of control behavior.

**Held:** For Parent in part and District in part. Corpus Christi Independent School District generally has an appropriate program designed to confer educational benefit to Sean. However, Corpus Christi Independent School District failed to timely respond to clear indications that Sean's assigned paraprofessional had overstepped his role and contributed to Sean's emotional deterioration. Corpus Christi Independent School District's involvement in Sean's March 3, 1999, arrest was appropriate in that it followed guidelines established in IDEA at 20 U.S.C. 1415(k)(9)(A), pertaining to role of school districts where law enforcement officials are involved. Corpus Christi Independent School District ordered to provide additional special education counseling and ARD committee determination of an appropriate extra-curricular activity.